The next case today is United States v. Willie Richard Minor, Appeal No. 21-1903. Attorney Pickett, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. I'm Karen Pickett. I represent the appellant Willie Richard Minor. And if I could respectfully request two minutes of rebuttal time. Yes, you may have it. Thank you. Your Honors, as you know, after Rehafe, the government was required in this case to prove that Mr. Minor knew he belonged to the relevant category of persons barred from possessing a firearm. And that's specifically what was decided in the language in Rehafe. I would suggest, Your Honors, upon a review of the record, what we have here is basically what Rehafe says we don't want to criminalize. We have a case where, as the Supreme Court says, we don't want to criminalize a defendant who may well lack the intent needed to make his behavior wrongful. His behavior may instead be an innocent mistake to which criminal sanctions normally do not attach. And I think, you know, one quote that keeps coming back to me as I've been reviewing the cases is the quote in Rehafe from Justice Holmes, which says, even a dog distinguishes between being stumbled over and being kicked. Ms. Pickett, please, there is a precise holding in Rehafe. You are asking us to reverse and to adopt a position which is contrary to the position of every other which has decided the question. The district court, on its own reasoning, decided that all he needed to know was he was in this particular category. He did not specifically need to know that he was forbidden from having a firearm. So why should we adopt the rule that you want and split with every other circuit which has addressed this question? Well, Your Honor, I have cited three cases following Rehafe, in which two have affirmed convictions for this domestic violence situation, but one, which is Triggs in the Seventh Circuit, and I realize it was a different procedural posture, but in Triggs the case was reversed. And also even in the case of Johnson, which was affirmed, there was a lengthy dissent. And I would suggest, Your Honor, that Rehafe specifically, I think what you're saying, Your Honor, is what the government argues, which is Mr. Minor can't assert ignorance of the law. And we completely agree with that. I'm sorry, excuse me, but that's far too broad a proposition. The Supreme Court in Voisin had clearly established that this type of law concerning domestic violence and later domestic violence conviction and a later conviction for possessing a firearm when federal law prohibits it. Voisin clearly created the precondition for the majority position in Rehafe. Are we agreed on that? We're agreed that Voisin basically said that regardless of whether the state statute has a domestic violence component, because at the time there was a number of states that did not have a specific domestic violence statute, that the court said it doesn't matter if it was an assault and it was on somebody who was in a domestic relationship. Four minutes remaining. We don't care that there's a separate statute. But that also was before Rehafe, which says this defendant had to know that he was a domestic violence misdemeanant. And what the court said in Rehafe... Ms. Pickett, on the record, isn't it pretty clear he knew that he was? I would argue absolutely not, because for several reasons... He didn't know he had been convicted of a crime of domestic violence? I would say that he didn't, Your Honor, because first of all, in Maine, there are two separate statutes. There's a statute for domestic violence and there's a statute for simple assault. Are you saying he wasn't in the category? Or are you arguing that he didn't know he was in the category? Well, it's interesting, because after the case where... I don't know if it's Razin. I guess it is where they discuss a case where there's not a specific domestic violence statute. I don't think that there's been a case, at least at the Supreme Court, that says, well, when there is and the person is convicted of not domestic violence assault, but simple assault, it's a different situation. But that aside, Your Honor, we know under REHAVE that knowledge of this is what's required. And one thing is that the person has to know what their status is. Was he required to go to domestic violence counseling? He was not, no. Not as far as I read the judgment, Your Honor. And on this issue of knowledge, I think the record appendix actually completely supports that he didn't have the knowledge. Okay, counsel. Your arguments really become rather confusing. I thought this case was about whether he had to know that this category of persons were specifically prohibited from having firearms. That's the way you briefed it to us. You asked us to adopt a rule contrary to the majority, indeed, the unanimous view of all of the circuits. You have now switched your ground of argument to say, oh no, my argument is he didn't even know he was in the protected category. Are you making both arguments? I believe, Your Honor, that was the gist. I've read my briefs over again, and that was the gist of my argument. I'm sorry. We don't go with gist. Either you made the argument to the district court or you did not. You made both arguments to the district court or you did not. If you did not, you are here on plain error review on what now appears to be an alternate argument you are making. Your Honor, I believe that the trial counsel couldn't have made it any clearer that his argument was that Mr. Minor did not have the knowledge that he was a domestic violence misdemeanor and that he did not belong to that status. That was based on several factors. If I could just look at the record and tell you why I'm making that argument about the knowledge and why that was made below. Well, we agree that any representations made during the plea bargaining were made by local Maine officials and have no consequence for a federal prosecution. Agreed? I agree that we didn't pursue the argument that the state prosecutor could buy the federal government. I don't believe that that is the argument. I think it's a sort of esoteric argument, but it does go to what Mr. Minor's state of mind was when he told the sheriff in Maine. I have a gun. It's located in my bathroom closet. I think everything Mr. Minor did, including consulting with his lawyer and having the charge reduced from domestic violence to a simple assault and signing a judgment to that effect and the docket saying that he was only convicted of a simple assault, all goes to his knowledge. Okay, Ms. Pickett, thank you. You have rebuttal time. Thank you. At this time, Attorney Pickett, please mute your audio and video. Attorney Block, if you could unmute your audio and video and introduce yourself on the record to begin. Good morning, Your Honors. May it please the court, Benjamin Block on behalf of the United States. The record below clearly shows that Appellant Minor knew that he had previously been convicted of simple assault under Maine law, that that conviction involved causing bodily injury or offensive physical contact, and that the victim of the offense was his wife. So, Mr. Block, there's a simple assault statute there, and there's also a domestic assault. And in order to be convicted of a simple assault, there are certain elements that the state has to prove. That is correct. And one of which is not that this person is a domestic partner. That is correct. And that's what he pled to. He pled to simple assault, not Maine's domestic violence assault. However, the Supreme Court in Hays... I mean, but suppose he pled to simple assault because he believed he wasn't guilty of domestic assault, but was willing to plead to simple assault. Well, knowing that he's guilty of domestic assault... Oh, simple assault is what he pled to. Well, he pled to simple assault, but he knew that the victim was his spouse at the time. And under Hays, that's all that's required to meet the definition of misdemeanor crime of domestic violence. Sure. You seem to be saying that he knew the two things that made his conviction a conviction for crime of domestic violence. He knew that he'd been convicted of assault and that he knew that the assault occurred on a family member. So you seem to be saying because he knew those two things, he therefore has the requisite knowledge, even if he doesn't know that those two things make a crime of domestic violence. That's how I understand your argument. And that's what the 11th Circuit more or less held in Johnson. Correct. It's really three things. But yes. But suppose we read Rahif differently. We read it more like the 7th Circuit did or the dissent in Johnson. We read it as saying, in Rahif, he knew the facts that made him unlawfully within the United States. But nevertheless, the Supreme Court said that was not enough because he didn't know he was unlawfully in the United States. In other words, he didn't know a point of law. Similarly, in Guzman, it was clear that he knew he'd been convicted of a crime. And it was clear that crime was punishable by more than a year. But we said he might not have known that the crime was, in fact, punishable by more than a year. So it seems that that would control this case here where there's certainly substantial evidence that he didn't know that the crime he'd been convicted of was a crime of domestic violence. Well, I think it goes beyond what the Supreme Court found in Rahif to say that the alien who was here unlawfully did not know that he was here illegally. That was remanded for... Sure. To find out whether he knew. And similarly here, we would remand so someone could find out if this fellow knew he was convicted of a crime of domestic violence. But we've already remanded... Substitute crime of domestic violence for unlawfully in the United States. Yes, and here we've already had that remanded. This is the second time that this case has been before the court. Sure, but it's the second time where the jury hasn't been told that the government needs to prove that he knew he was in that category. He knew he'd been convicted of a crime of domestic violence. As a matter of fact, the court doesn't do it twice. It's a tough issue. I'm not suggesting that the district court didn't try to follow our directions. It was a very cogent analysis by Judge Hornby, very much like the 11th Circuit analysis and majority opinion in Johnson. But if we prefer the 7th Circuit's analysis in Twigg or our reading in Guzman of Rahif, then we do have to send it back again. Well, again, I would say that the 7th Circuit and Twiggs did not make the determination that you're making. They remanded it for further factual determinations. And here we have a situation in which the defendant has been proven to know all the constituent parts of the federal definition of a misdemeanor crime of domestic violence. Let me pause you there. Would you agree that in Rahif, if the defendant was proven to know all the facts that made his presence in the United States unlawful, he would still not be guilty, necessarily, unless he knew it was unlawful? That's what the Supreme Court held. Well, I would disagree, because the language of unlawfully present is similar to the language of unauthorized use of food stamps in La Paroda. And in Alanis, the Supreme Court said that what was required was not knowledge of the specific food stamp regulations, but of the facts that made the use unauthorized. And there's really an unbroken strength of Supreme Court case law that indicates that what is required is factual knowledge, not legal knowledge, from excitement video to posters and things to staples, where you don't need to know that your machine gun is subject to further regulation. You just need to know the characteristics of it. And here, Mr. Smith knew the characteristics of his conviction. How is unlawful not a legal issue? In other words, the Supreme Court could not have been clearer. The government had to prove that he knew he was unlawfully in the United States. Isn't that a question of law, whether he was lawfully in the U.S.? Well, it's a collateral question, and the issue of proving knowledge of unlawfulness can be circumstantial. So, for example, in La Paroda, the defendants acquired the food stamps in a manner that suggested they knew they weren't acquiring them legally. I'm not sure exactly what the proof would have to be, but here we don't have a provision that requires knowledge of unlawfulness. We have a provision that requires knowledge of a prior conviction and the characteristics of that prior conviction. And just to go back, he pled guilty to simple assault, and he knew that the object of his assault for which he was pleading guilty was his wife, thereby satisfying the domestic aspect of it. And from your point of view, those two things then fall within the category, factually, that we're concerned with. Correct. And this court decided as far back as 2002 in the Dennis decision, which was at 297F325, that even though Maine has a domestic violence statute and a simple assault statute, that conviction under the simple assault statute, where the victim is a domestic member of the family, is a sufficient predicate for 922G9. And the Supreme Court affirmed in a separate context, but came to the same conclusion in Hayes. So how do you distinguish our holding and Guzman? I apologize, Your Honor. I'm not familiar with Guzman. That was the case where we held that even though he was convicted of a crime punishable by more than a year, the government had to prove that he knew he was convicted of a crime. He needed to know that the crime he was convicted of was punishable by more than a year. Well, I would say this case is on all four points with that, that what we need to prove here was that he knew the here he needed to know it was a misdemeanor and we proved that he knew it was a misdemeanor there. The government needed to prove that he knew it was a felony and what evidence they had to show that I'm not sure. But here we have the defendant's own testimony that he knew that it was a misdemeanor and that he knew it involved the use of force and that he knew that the victim was his wife. All right. Anything further, Mr. Block? No, we would rest on our briefs. Thank you very much. Thank you. Thank you, Mr. Block. Please mute your audio and video at this time. Attorney Pickett, if you could return and for your two minute rebuttal. Unmute your audio and video at this time and reintroduce yourself on the record to begin. Thank you, Your Honors. Karen Pickett again for Mr. Minor. As I listened to the prosecutor, I understand what his argument is, which is essentially that Mr. Minor was in that category of people who cannot possess a gun. And as the way the judge instructed the jury, once Mr. Minor was convicted of a simple assault and he never disputed that the complainant was his wife, then there didn't need to be any proof that he knew that he had the status of a domestic violence misdemeanor. And what I would say, Your Honors, is that, and I believe this is what Judge... I'm sorry. I thought government counsel said and it was undisputed and the evidence shows he knew it was a misdemeanor. He knew it was a misdemeanor. I'm arguing that based on what I argued before, that he at least was mistaken as to whether it was a domestic violence misdemeanor. And again, we're talking about mens rea. We're talking about what's in Mr. Minor's head and what the Supreme Court specifically said. No, no, no. Pardon me. You are talking about jury instructions, right? You may have argued to the jury that, gosh, he just didn't know. He was clueless. And they rejected the argument. I would disagree with that, Your Honor, because the way the judge instructed the jury, they were never instructed that they had to find that he had knowledge. This was the request. That's correct, because that is not what the law, based on these factual concessions you've just made, the law requires that he know those facts and he did. And again, obviously, my argument is that he did not know that he was a domestic violence misdemeanor. But I just want to make one quick argument, and that is that as the Supreme Court said in Rehave, if a defendant has a mistaken impression about a collateral legal question, and that's exactly what happened here. He had a mistaken impression that he wasn't a domestic violence misdemeanor because he had been convicted of simple assault, he had been reduced by the DA, he consulted with his lawyer, then that negates the element of an offense. And the offense here is the mens rea. Okay, thank you, Ms. Pickett. Thank you very much, Your Honors. That concludes argument in this case. Attorney Pickett and Attorney Block, you should disconnect from the hearing at this time.